The questions certified to us, which, only, this appeal brings up, relate to the duties of the state board of tax commissioners, when fixing the valuation of the relator's special franchises in the town of Haverstraw, and to the powers of these village assessors, after the statement of the state board, as filed with the clerk of the town, shall have been delivered to them, as the officials charged with the duty of making up the local assessment rolls. The West Shore *Page 489 
railroad, of which the relator is the lessee, passes, within the town of Haverstraw, through the two incorporated villages of Haverstraw and West Haverstraw. In June, 1908, the state board of tax commissioners finally assessed the special franchise of the relator in the town and sent to the town clerk a notice of the valuation of the "special franchise of the West Shore Railroad Company * * * in and for the town of Haverstraw, village of Haverstraw, track across Gurnee Av., Long Clove, Short Clove, Fairmont Av., New Main St., West Side and Railroad Avs.; Village West Haverstraw, across Maple Av. and White road, in county of Rockland, at the sum of $25,400." The town clerk of the town of Haverstraw sent a copy of this notice to the assessors of each of the villages named. The special franchises of the relator in the town, which were the subject of assessment by the state board, according to their notice to the town clerk, comprehended seven highway crossings within the village of Haverstraw and two within the village of West Haverstraw. The assessors of the village of Haverstraw, as appears from their return to the writ, met and determined that the portion of the general valuation of the relator's special franchise thus fixed by the state board, which should be placed upon the tax roll of their village, was the sum of $16,800. The assessors of the village of West Haverstraw, it is stated, placed upon their tax roll, as their portion of the valuation, the sum of $7,250. It will be observed that the two sums do not equal the amount assessed by the state board. This is not particularly material to the discussion, except as it shows that the action of the assessors was not based upon a mere clerical apportionment. It is plain enough that the assessors of the village of Haverstraw have apportioned the assessment of the state board judicially; that is, by determining for themselves how much of the valuation was to be placed upon the relator's special franchise in their village. The relator, conceding the right to tax its special franchises, complains that this action, on their part, was illegal and in excess of their lawful functions; in which contention it has been sustained by the Appellate *Page 490 
Division. I think that, under the provisions of the Tax Law of this state, the valuation by the state board of the relator's special franchises in the town of Haverstraw should have been so certified by that body to the town clerk, as that the statement should contain the valuation of each special franchise in the several villages therein. Section 42 of the Tax Law, in force at the time, contained the provision for the "assessment of special franchises". It provides that "the State Board of Tax Commissioners shall annually fix and determine the valuation of each special franchise subject to assessment in each city, town, or tax district. After the time fixed for hearing complaints the tax commissioners shall finally determine the valuation of the special franchises, and shall file with the clerk of the city or town in which said special franchise is assessed a written statement duly certified by the secretary of the board of the valuation of each special franchise assessed therein as finally fixed and determined by said board". The section, then, further provides that "each city or town clerk shall, * * * deliver a copy of such statement certified by him to the assessors or other officers charged with the duty of making local assessments in each tax district in said city or town and to the assessors ofvillages and commissioners of highways within their respective towns and villages. The valuations of every special franchise asso fixed by the State Board shall be entered by the assessors or other officers in the proper column of the assessment roll", etc. This language indicates that it is the value of each right to occupy the public property, constituting the special franchise, which the state board is required to determine and to certify in its statement to the town clerk, and that the assessors of the village are to place upon the assessment roll, only, the valuation of every special franchise as so fixed. The state board recognized the obligation to state separately the special franchises, which entered into their valuation; for their notice to the town clerk enumerated each highway crossing. The argument of the appellants admits that the board must place a separate value upon each crossing; but maintains that only *Page 491 
one valuation in gross is necessary for each tax district. In the case of People ex rel. Metropolitan Street Railway Co. v.State Board of Tax Commissioners, (174 N.Y. 417), the facts were such as to make the particular decision inapplicable here; for the railway was within the streets of the city of New York and all its properties in rights and privileges were managed as one piece of property. As it was said by Judge EARL, the referee in that case, speaking of the relator's special franchises, "there was nothing in the streets to distinguish one from the other". And it was said in this court, upon that appeal, that the franchises" all belong to one system, the earning capacity of which may be ascertained, but not that of each special franchise independent of the others." (p. 443.) While the action of the state board was justified in that case, where the street railway company's special franchises were wholly within the city, the case furnishes no controlling guide for their action, where the tax district is, as here, a town, within which are two incorporated villages, containing subordinate tax districts and where the relator's operation of its railway is interrupted by several detached crossings of public ways, or places, to use each of which the consent of the proper local authorities must be obtained. Unless the local officers are to make the distribution of the state board's gross valuation, it must be that that central body is required by the law, in such a case, to certify to the town clerk the valuation of each special franchise enjoyed within the town, in order that that valuation may be certified by him to the assessing officers of the villages, in each of which is a special franchise assessed. That the statute means that each special franchise is a subject of consideration, as an independent and separable element of the general property, however, in instances, they may be considered collectively, or in gross, as one, may be perceived from the language of the statute. These special franchises, which, first, were made subjects of state taxation by an amendment of the Tax Law in 1899, comprehend, as taxable property, the value of the right and the value of the tangible property situated in the public street, or highway, directly, or as incidental, *Page 492 
because used in connection with the special franchise. Subdivision 3 of section 2 of the Tax Law defines a special franchise as including "the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise." When a railroad corporation is allowed to construct, maintain and operate structures and trains in, under or above, any public way or place, it enjoys a special franchise. That, in each instance, this special franchise is a separate and independent factor for consideration and valuation is somewhat evidenced from the exception in subdivision 4 of the section, that the term "special franchise" shall not be deemed to include a crossing of a street, highway, or public place outside the limits of a city, or incorporated village, which is less than 250 feet in length. When the right to do something in the public street, or highway, which, except for the grant under which it is exercised, would be a trespass, the right is a special franchise. (People ex rel.Met. St. Ry. Co. v. State Board of Tax Comrs., supra.)
I think that the provisions of the statute imposed the duty upon the state board of tax commissioners, in such a case, to state in their notice, separately, the valuation in gross of the special franchise of the relator within each village of the town, as determined by them; in order that the assessing officers of these separate taxing districts might be able to perform the clerical duty of entering upon their assessment rolls the amount belonging thereto. Had that been done, of course, no question could have arisen with respect to the apportionment of the town assessment upon the relator's special franchises; but it was not done and the consequence was that the local assessors were left to perform a duty of fixing the valuation of the relator's special franchise in the village of Haverstraw, which should have been performed by the state board. This was a function judicial in its nature, which the assessors were not legally capable of performing; inasmuch as it was not provided in, nor intended by, the law that they *Page 493 
should act otherwise than ministerially and clerically when dealing with the assessment of special franchises in their village. (See People ex rel. Rochester Tel. Co. v. Priest,181 N.Y. 300, 305; People ex rel. N.Y.C. H.R.R.R. Co. v.Priest, 169 ib. 432, 436; People ex rel. Metropolitan St. Ry.Co. v. State Board of Tax Comrs., supra.) I think that the statute has excluded the exercise by the local assessors of the power to fix the valuation of special franchises by expressly conferring that power and duty upon the state board of tax commissioners in former section 42. If an apportionment involves a mere work of measurement, or of mathematical calculation, I suppose the local officers to be capable of carrying it out for their locality; for section 42 provides that "if a part only of such special franchise is in a village, or is in a village situated in more than one tax district, it shall be the duty of the village assessors to ascertain and determine what portion of the valuation of such franchise, as the same has been fixed by the state board, shall be placed upon the tax roll for village purposes". Apportionment in such a case would not involve the exercise of judicial functions, but, merely, such work as measurements of the crossing to ascertain what proportion lay within, or without, the village limits. The present appeal presents no such case. Nine crossings were within the town of Haverstraw and we cannot assume that these special franchises were of such equal value as to permit of a proportional valuation of the seven in the village of Haverstraw. The valuation of each crossing depends upon various elements; such as its character, the extent to which it is occupied by the relator, the situation and public use of the street, or way, and other facts bearing upon the advantage to the relator of the use at that point. When these village assessors fixed upon the sum of $16,800 as the portion of the valuation of the special franchise to be placed upon the assessment roll of their village, they must have exercised their judgment in reaching that result. They were without information as to facts, which the law required to be furnished to the state board, or as to the value of the tangible property at the crossing, as fixed by *Page 494 
that body. They must have acted judicially; not ministerially. But that was not within the legislative intent. It was intended that what judgment was to be exercised should be that of the state board and not of local officers. The statute creating these special franchises as subjects of taxation received careful and elaborate consideration in the opinion of Judge VANN, speaking for this court, in People ex rel. Met. St. Ry. Co. v. StateBoard of Tax Commissioners, (supra). It was there considered that a new system of taxation had been created with respect to a new character of property; the duty of valuing which was assigned to the state board of tax commissioners, as a body composed of tax experts, rather than to local assessors, whose functions had never been exercised in so wide and difficult a field. It was considered that the law called for "new methods of valuation and the exercise of functions which had never belonged to local assessors". "The property", it was observed, "was sui generis,
and from its nature could not be valued by local officers" (p. 439). I think that the provisions of the statute compel the construction that the valuation of special franchises is a matter exclusively committed to the state board of tax commissioners and that, consequently, it was beyond the power of the village assessors, and quite outside their legal functions, to make the assessment in question. It can be readily imagined how, if any other rule be adopted, conflicts between several boards of assessors within a town may occur and confusion result.
Of course, what has been said has no application to the apportionment among school districts provided for in sections 40 and 43 of the Tax Law. The duty of town assessors under those sections would be to apportion the particular valuations fixed by the state board for each political subdivision of the town among the school districts of such town.
In connection with the reasoning of the Appellate Division, enough has been said and I reach the conclusion that the first question certified to us should be answered in the negative and the second question in the affirmative; except that as to each taxing district the valuation may be stated in gross by the *Page 495 
state board. As this conclusion determines the appeal, an answer to the third question is unnecessary.
The order appealed from should be affirmed, with costs.
CULLEN, Ch. J., HAIGHT, VANN, WERNER and HISCOCK, JJ., concur.
Order affirmed.