JOHN SCHROEDER et al., Appellants, *v.* C. RUSSELL SELKIRK et al., Respondents.

Third Department, November 21, 1968.

*Jesse Moss* and *Sue Caplan* for appellants.

*Walter J. Bellcourt* for C. Russell Selkirk, respondent.

*Louis J. Lefkowitz, Attorney-General* (*Ruth Kessler Toch* and *Thomas G. Conway* of counsel), for Agriculture and New York State Horse Breeding Development Fund, respondent.

HERLIHY, J. This is an appeal from a judgment and order of Special Term dismissing the complaint for failure to state a cause of action.

The relief sought in the complaint is that the expenditures of money under the direction and control of the defendants by giving it to Yonkers Raceway, Inc. be declared illegal, wrongful and in violation of law and that the same be enjoined. No answer has been interposed.

One specific allegation in the complaint, *inter alia,* is that a certain agreement was made between the defendant Fund and Yonkers Raceway, Inc., and which is illegal in that the Fund is providing money to the said raceway to promote races not bearing the name " New York Sire Stakes ". Subdivision 2 of section 55-e of the Pari-Mutuel Revenue Law (L. 1965, ch. 567) expressly states that such races are " to be known as ' New York sire stakes ' ". The complaint alleges that the races are to bear the name of Yonkers Raceway and from the plaintiffs' Exhibit " A " which was submitted to the court below, it appears that the race is to be " Yonkers Raceway New York Bred Stakes No. 1 ".

In 1965 the Legislature enacted into law chapter 567, entitled " Agriculture and New York State Horse Breeding Development Fund "*. Section 55-a of article III provided for " Agriculture and New York State Horse Breeding Development Fund " and stated therein: " The fund is created in order that it may promote the breeding of horses in this state on its own responsibility and under its own business management. The policy, good faith and interest of the state are concerned with the management and development of the fund and are committed to promotion of horse breeding in this state in active cooperation with the fund."

---

* "Legislative intent. The legislature reiterates and declares it to be in the definite interest of the state, to promote and develop agriculture generally and the improvement of the breeding of horses particularly * * * The legislature further declares that state and local revenues will be vitally affected, and the state's economy likewise will be affected unless measures are taken to encourage the breeding and development of standard-bred horses, and the retention in this state of contending horses to meet the growing demand for such animals, to maintain the harness racing tracks presently in operation."

The fact that sire stake races are to be run at a designated raceway does not imply that the name of the same be included in the title of the race. Of course, the name of the track may be shown somewhere in the advertisements or programs, but not in the context as presently proposed or in any event in the name or title of the race.

While we agree with Special Term that the statute contains different language in describing the races, the title of the races is specifically set forth in section 55-e, which provides: " 2. The fund is further authorized and directed in each year, in coopera-tion with each licensee harness track in this state, to provide for the running of a minimum of six stake events at each such licensee harness track * * * *to be known as 'New York sire stakes'* and to contribute to the purses, stakes or prizes to be awarded in such 'New York sire stakes', such sums as the fund shall deem advisable." (Emphasis supplied.)

Subdivision 3 of the same section provides for eligibility for the " New York sire stakes ".

The intent becomes further apparent by referring to a meet-ing of the Development Fund held December 27 and 28, 1967 where a resolution was offered, the pertinent part of which states: " WHEREAS, the Agriculture and New York State Horse Breeding Development Fund has the statutory responsibility to prescribe and adopt rules, regulations, and conditions for the conduct of *New York Sire Stakes* " (emphasis supplied).

Further, in the letter of September 14, 1967 from the Execu-tive Director of the Fund to Yonkers Raceway, Inc., which approved of the use of the name " Yonkers Raceway New York Bred Stakes No. 1 ", in the second paragraph " B ", reference is made to " New York Sire Stakes ".

While other references to the race are made in different lan-guage, the statute provides that the race *is to be known as* " New York sire stakes " and the permitting of any other description is beyond the power and authority of the trustees or director of the Fund. The rule of statutory construction as enunciated in *Matter of Smathers* (309 N. Y. 487, 494) is applicable: " In interpreting a statute, it is of course well settled that we must be guided by the rule that where the language is clear and unambiguous, the intent of the framers is to be first sought in the words and language employed and, if the words plainly and clearly express the sense of the framers, there is no reason to resort to other means of interpretation (*Matter of Daniman* v. *Board of Educ. of City of N. Y.*, 306 N. Y. 532, 543; *Meltzer* v. *Koenigsberg*, 302 N. Y. 523, 525; *Matter of Rathscheck*, 300 N. Y.

346, 350).'' (See, also, *Bright Homes* v. *Wright,* 8 N Y 2d 157, 161–162.)

Accordingly, such stake events at race tracks are to be known as '' New York sire stakes '' and thus the purpose of the statute '' to promote horse breeding in this state '' will be best effected.

We find respondents' remaining contentions, as respects standing and nonjoinder, without merit.

The order and judgment should be reversed, on the law, with costs.

Gibson, P. J., Reynolds, Aulisi and Staley, Jr., JJ., concur.

Order and judgment reversed, on the law, with costs.