In the Matter of PATROLMEN'S BENEVOLENT ASSOCIATION OF THE CITY OF BUFFALO et al., Respondents, v CITY OF BUFFALO et al., Appellants.

Fourth Department, December 12, 1975

*Leslie G. Foschio, Corporation Counsel (James McLaughlin* of counsel), for appellants.

*Sargent & Lippes (Nicholas Sargent* of counsel), for respondents.

Moule, J. The sole question presented on this appeal is whether section 1 of chapter 360 of the Laws of 1911, as amended, prohibits the establishment of a four-platoon system within the City of Buffalo Police Department.

Appellants are the City of Buffalo and the Police Commissioner. Respondents include the Buffalo Patrolmen's Benevolent Association and its president who brought the original proceeding as a class action on behalf of himself and all other Buffalo patrolmen.

The facts of this case are neither complicated nor in dispute. In 1911 the State Legislature enacted chapter 360 entitled "An act to promote the health and efficiency of policemen in cities of the first and second class." That section, as most recently amended by chapter 788 of the Laws of 1970 provides in part as follows: "Within thirty days after this act takes effect, the commissioner of police, superintendent of police, chief of police, or other officer or officers, having the management, control or direction of the police force of any city of the first or second class in this state, (except the City of New York Police Department) or of the uniformed transit police force of the New York city transit authority, shall divide the lieutenants, sergeants and patrolmen of such force (but not including the detective sergeants) who may be on duty in the open air, on the streets, in or about transit facilities, or other public places of the city, into three platoons. No one of such platoons nor any member thereof shall be assigned to more than one tour of duty; such tour of duty shall not exceed eight consecutive hours of each consecutive twenty-four hours and no platoon or member thereof shall be assigned to more than forty hours of duty during any seven consecutive day period, excepting only that in the event of strikes, riots, conflagrations, or occasions when large crowds shall assemble, or other similar emergency, or on a day on which an election authorized by law shall be held, or for the purpose of changing tours of duty, so many of said platoons, or of the members

thereof, may be continued on duty for such hours as may be necessary."

Pursuant to this directive, the City of Buffalo has provided 24-hour police protection by dividing its uniformed force into three platoons. The first platoon is on duty between 8:00 A.M. and 4:00 P.M., the second between 4:00 P.M. and midnight, and the third between midnight and 8:00 A.M.

On January 20, 1975 appellant commissioner announced the creation of a fourth platoon which, effective January 26, 1975 would be on duty between the hours of 6:00 P.M. and 2:00 A.M. The rationale for this decision developed as a result of a recent analysis of Buffalo crime figures which indicated that the peak crime period in the city begins in the early evening and continues until shortly after midnight. In order to provide effective police protection during these hours under the three-platoon system additional patrolmen would have to be assigned to both the second and third platoons. This approach, however, due to the duty hours of the second and third platoons would result in extraneous police protection before and after the critical crime period, specifically from 4:00 P.M. until 6:00 P.M. and from 2:00 A.M. until 8:00 A.M. Thus, a fourth platoon, by overlapping its tour of duty with those of the second and third platoons, would double the amount of police protection during the period of high crime incidence while maintaining economy in the allocation of the force.

On January 23, 1975 three days prior to the effective date of the fourth platoon, respondents, by an order to show cause, sought to enjoin its creation on the ground that it was prohibited by chapter 360 of the Laws of 1911, as amended. In a judgment entered February 13, 1975 the Erie County Supreme Court at Special Term found in favor of respondents and prohibited the implementation of the four-platoon system.

On this appeal appellants contend that the sole legislative intent in passing chapter 360 was to regulate the number of hours worked by policemen on a daily and a weekly basis. It is urged that the language of that enactment, specifically the phrase which directs that "the commissioner * * * shall divide the * * * force * * * into three platoons," was designed only to establish three platoons as a minimum, and does not preclude the creation of more than three platoons provided that these additional platoons do not violate the statutory restrictions as to the number of hours worked. According to appellants, the fourth platoon in this case, since it preserves

the 8-hour day and the 40-hour week, is not prohibited by chapter 360. We disagree.

A statute must be read according to the language used by the Legislature. Absent ambiguity as to the statute's scope and application, courts may not resort to rules of construction in interpreting such enactments *(New Amsterdam Cas. Co. v Stecker,* 3 NY2d 1). Judicial departure from the literal language of a statute should be employed "with extreme caution and only where the plain intent and purpose of a statute would otherwise be defeated." *(Bright Homes v Wright,* 8 NY2d 157, 161–162.)

The statute in this case is clear and precise in its directive. It provides that "the commissioner * * * shall divide the * * * force * * * into three platoons." The use of the word "shall" in this context, absent "ameliorating or qualifying language * * * is deemed to be mandatory." *(Matter of Mulligan v Murphy,* 19 AD2d 218, 223; *People v Ricken,* 29 AD2d 192, 193.) The statute does not, contrary to appellants' interpretation, provide for division into "at least" three platoons. Had this been the Legislature's intent, it could easily have inserted these words at the time of passage. To permit the creation of a fourth platoon in this case would necessitate judicial insertion of the words "at least" into a statute which on its face is clear and definitive. To do so would violate the accepted rules of judicial interpretation *(People ex rel. New York Cent. & Hudson Riv. R. R. Co. v Woodbury,* 208 NY 421).

This construction of the statute as mandating three and only three platoons is supported by the fact that in 1969, the City of New York, prior to implementing additional platoons, sought specific legislation exempting it from chapter 360. In a memorandum filed in support of this exemption, the legislative representative of that city made reference to the precise "peak crime period" problem expressed by appellants here. The conclusion reached by that memorandum was that chapter 360 "mandates only three platoons" (NY Legis Ann, 1969, pp 79–80). The Legislature subsequently granted the exemption to New York City.

Although appellants' desire to provide adequate police protection during the period of high crime is laudable, the statute clearly prohibits the accomplishment of that goal through the creation of a fourth platoon. If no practical solution can be reached within the confines of a three-platoon system by altering, for example, the duty hours of each platoon such

that they begin their respective tours at 10:00 A.M., 6:00 P.M. and 2:00 A.M. and by assigning additional patrolmen to the 6:00 P.M. platoon, then appellants must resort to the Legislature to exempt them from this statute. Until that time, however, a fourth platoon is contrary to the express language of chapter 360.

The judgment should be affirmed.

MARSH, P. J., CARDAMONE, GOLDMAN and WITMER, JJ., concur.

Judgment unanimously affirmed, without costs.