Wachtler, J.
This is an action by the Patrolmen’s Benevolent Association of the City of New York, Inc., seeking to enforce an order and judgment requiring the City of New York to pay a 6% salary increase for the 1975-1976 fiscal year. On this appeal the city contends, inter alia, that it is prohibited from paying the increase by the wage freeze legislation adopted by the Legislature in September, 1975.
Having failed to reach accord on the terms of a collective bargaining agreement to cover the two-year period beginning July 1, 1974, the PBA and the city submitted their dispute to an impasse panel pursuant to the provisions of the New York City Collective Bargaining Law (Administrative Code of City of New York, § 1173-1.0 et seq.). The decision and recommendations of the impasse panel, handed down on April 30, 1975, provided that the PBA be granted an 8% salary increase for the first year to be covered by the contract. The salary increase for the second year was set at 6%. The panel’s findings were accepted in writing by both parties and neither sought to appeal the determination to the Board of Collective *207 Bargaining, although that avenue was open to them. Subsequently, the panel’s findings were incorporated into a tentative collective bargaining agreement. While the representative of the PBA signed this tentative agreement, the city refused to do so, giving as a reason the city’s increasingly grave financial outlook.
Faced with the city’s refusal to execute and perform the agreement, the PBA, by order to show cause, brought on a proceeding under CPLR article 75 to confirm the award of the impasse panel. The city cross-moved to dismiss the petition on the ground that the decision of the impasse panel did not constitute an award within the meaning of article 75. The city’s cross motion was denied. The city having subsequently failed to timely serve its answer to the petition, the petition was granted upon default, and the impasse panel’s determination was confirmed by an order and judgment dated and entered on July 1, 1975.
Thereafter the city commenced computing and paying the retroactive salary increase for the 1974-1975 fiscal year and the increase ordered for the 1975-1976 fiscal year, in compliance with the terms of the July 1 order. In September, 1975, however, the Legislature enacted the law freezing the wages of the city’s employees (L 1975, ch 868, § 2, subd 10, as amd by L 1975, ch 870, §11), and the city immediately discontinued paying the 1975-1976 increase.
The PBA then moved to compel the city to comply with the July 1, 1975 judgment, and the city opposed the motion. The PBA urged that the wage freeze should not be imposed in their case since their salary increase was contained in a judgment of a court and the legislation had no application to wage increases pursuant to judicial judgments. They also mounted a broadside constitutional attack against the statute imposing the wage freeze. The city, on the other hand, asserted that the legislation did apply to the instant set of facts and that the statute suffered no constitutional infirmity.
The lower court held that the wage freeze legislation was not applicable to the instant case involving a salary increase embodied in a judicial judgment. Nevertheless, that court imposed a stay on the enforcement of its judgment until June 30, 1978, declaring that it was doing so "in the interests of justice and equity and in an attempt to further the recovery of the City of New York from its financial plight”. Both parties appealed that court’s determination.
*208 On appeal the Appellate Division also found that the wage freeze legislation did not cover judgments. In addition, they modified the lower court’s order by deleting that portion staying enforcement of the order since "there [was] neither warrant here for judicial legislation nor power to do so.” Having so held, the Appellate Division certified the following question: "Was the order of this court, entered April 26, 1976, properly made?”
The pertinent provision of the wage freeze legislation provides: "Increases in salary or wages of employees of the city * * * which have taken effect since June thirtieth, nineteen hundred seventy-five or which will take effect after that date pursuant to collective bargaining agreements or other analogous contracts, now in existence or hereinafter entered into * * * are hereby suspended.” The threshold question now before us, therefore, is whether this statute applies to the present case.
It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature (Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38; see Matter of Carr v New York State Bd. of Elections, 40 NY2d 556), and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used (Bender v Jamaica Hosp., 40 NY2d 560; New Amsterdam Cas. Co. v Stecker, 3 NY2d 1; Meltzer v Koenigsberg, 302 NY 523; Matter of De Peyster, 210 NY 216). The statute under scrutiny in this case suspends wage increases "pursuant to collective bargaining agreements or other analogous contracts.” In this case, the wage increase did not "take effect” by virtue of a collective bargaining agreement,, but rather it took effect as the result of a judicially mandated remedy embodied in a judgment. Even if it would be constitutionally permissible for a statute to suspend a judgment, nowhere is there language which would suggest this legislative intent; nor can it be said that the language employed permits an interpretation which would broaden the scope of the statute so as to encompass such increases (see New Amsterdam Cas. Co. v Stecker, supra; Matter of Patrolmen’s Benevolent Assn. of City of Buffalo v City of Buffalo, 50 AD2d 101). Hence, where as here the statute describes the particular situations in which it is to apply, "an irrefutable inference must be drawn that what is omitted or not included *209 was intended to be omitted or excluded” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240).
Had the Legislature intended that the wage freeze also apply to situations involving judicially mandated salary increases, they were free, assuming arguendo constitutional validity, to draft appropriately worded legislation (cf. Bright Homes v Wright, 8 NY2d 157). We would but note that the statute in question was adopted some two months after the July 1 judgment requiring that the city pay the salary increase and we must assume the Legislature was well aware of this fact when the statute was passed. Other statutes, adopted at the same time as the wage freeze law and also seeking to alleviate the financial plight of the city, by their very terms have specific application to judgments (see, e.g., Local Finance Law, § 85.10, L 1975, ch 870, § 24; Local Finance Law, § 85.30, L 1975, ch 870, § 26).
Nor is our view altered because the July 1 judgment was one confirming the award of the impasse panel. "A judgment entered upon the confirmation of an arbitral award has the same force and effect in all respects as * * * a judgment in an action” (23 Carmody-Wait 2d, NY Prac, § 141:186; see Jacobowitz v Herson, 268 NY 130, 135-136).
Finally, we are in agreement with the Appellate Division in its holding that the lower court was without power to stay the enforcement of its order (see Matter of Young v Gerosa, 11 AD2d 67, 74; accord Matter of Bird v McGoldrick, 277 NY 492, 500).
We find no merit in any of the other arguments proffered by the city.
Accordingly, the order of the Appellate Division should be affirmed and the certified question answered affirmatively.